BEASLEY v. EQUITABLE SECURITIES COMPANY.

Opinion delivered March 5, 1904.

1. LOST PLEADING—PROOF.—Where the complaint in an overdue tax proceeding is lost, the warning order and decree of the court are admissible to show that a certain tract of land was described and proceeded against in the complaint.   (Page 605.)

2. DECREE—RECITAL OF JURISDICTION.—A recital   in a decree   rendered upon constructive service that the publication was according to law is sufficient evidence to sustain the jurisdiction of the court against collateral attack.   (Page 606.)

3. SAME—JURISDICTION.—By the filing of a complaint against a tract of land in an overdue tax suit, stating that the taxes were due thereon, and by publication of the required notice, jurisdiction was acquired over the land and its owner, and the failure of the clerk to enter on record a decree *pro confesso,* as required by the act of March 12, 1881, was a mere irregularity, not affecting the jurisdiction of the court.   (Page 606.)

4.  LIMITATION—TWO YEARS' STATUTE CONSTRUED.—Sand. & H. Dig., §
    4819, providing that "no action for the recovery of lands * * *
    against any person who may hold such lands under a donation deed
    from the State shall be maintained unless it appear that the plain-
    tiff, his ancestor, predecessor, or grantor, was seized or possessed
    of the lands in question within two years next before the commence-
    ment of such suit or action," refers to donation deeds executed by the
    Auditor or Commissioner of State Lands, conveying lands forfeited
    for taxes to actual settlers, and not to deeds executed by the Governor
    to carry into effect grants by the State. (Page 607.)

5.  BETTERMENTS—COLOR OF TITLE.—One holding lands adversely under
    bond for title is not entitled to recover for improvements made by
    him, under act of March 8, 1883, providing that "if any person, believ-
    ing himself to be the owner, either in law or equity, under color of
    title, has peaceably improved, or shall peaceably improve, any land
    which, upon judicial investigation, shall be decided to belong to
    another, the value of the improvements made as aforesaid * * *
    shall be paid by the successful party to such occupant," etc. White
    v. Stokes, 67 Ark., 184, followed. (Page 609.)

6.  COLOR OF TITLE—DEFINITION.—Color of title is that which in appearance
    is title, but which in reality is no title. (Page 610.)

7.  STATUTE—CONSTRUCTION.—Words in a statute which have previously
    received a judicial interpretation are presumed to be used in that
    sense, in the absence of anything to indicate a contrary intent.
    (Page 610.)

Appeal from Jefferson Circuit Court.

ANTONIO B. GRACE, Judge.

Affirmed.

*S. R. Allen* and *Dodge & Johnson,* for appellants.

Appellee was bound to depend upon the strength of his own
title. 47 Ark. 215, 413; 65 Ark. 610. There was no complaint
upon which judgment could be rendered. 56 Ark. 419; 68 Ark.
211. The act of 1891 must be strictly followed. 56 Ark. 30;
65 Ark. 90; 70 Ark. 207. The deed of the commissioner was
void. 53 Ark. 445; 59 Ark. 5. Absolute certainty is required
to work an estoppel. 24 Conn. 547; 95 Ga. 142; 11 Mass. 350;
11 Am. & Eng. Enc. Law (2d Ed.), 390; 94 U. S. 608; 158 U. S.
221. The action was barred. 59 Ark. 460; 60 Ark. 163, 499;
53 Ark. 419; 59 Ark. 151; 66 Ark. 141; Sand. & H. Dig., § 4819.
Defendants were entitled to betterments. 65 Ark. 305.

*Bridges & Wooldridge,* for appellee.

The court has jurisdiction. The complaint was sufficient. 55 Ark. 30; 56 Ark. 422. The description of the land was sufficient. 63 Ark. 1. The decree cannot be attacked collaterally. 50 Ark. 188; 55 Ark. 398; 57 Ark. 423. The statute of limitations does not apply. 66 Ark. 48; 65 Ark. 309. Beasley could claim only improvements. 67 Ark. 184.

BATTLE, J. On the 5th day of August, 1899, Equitable Securities Company brought an action in the Jefferson circuit court against Charles Beasley to recover the southeast quarter of the northwest quarter of section 31, in township 4 south, and range 17 west. Plaintiff alleged in its complaint that, in a suit instituted by the State of Arkansas on relation of Jefferson county against certain lands in the Jefferson circuit court, on the chancery side thereof, under the act entitled "An act to enforce the payment of overdue taxes," approved March 12, 1881, the court ordered that the land sued for be sold to pay the taxes assessed against it and remaining unpaid, and appointed and directed John M. Clayton, as special commissioner, to make the sale; that Clayton, as such special commissioner, in pursuance of the same, on the 20th day of February, 1883, sold the land to Joseph and Louis Altheimer, reported the sale to the court, and, the sale having been confirmed and the land not having been redeemed in the time prescribed by law, conveyed it to the purchasers. That Joseph and Louis Altheimer, on the 2d day of May, 1892, conveyed said land to M. H. Johnson in trust to secure certain indebtedness to Norman F. Thompson; that this mortgage was foreclosed by a decree of the circuit court of the United States for the Eastern District of Arkansas, the land was sold under the decree to plaintiff, the sale was confirmed by the court, and the land was conveyed to the purchaser.

George J. Gould, on his motion, was made a defendant in the action. The two defendants filed separate answers to the complaint. The substance of these answers is correctly set out in the abstract of the defendants in the words and figures following:

"The answers deny title in plaintiffs; deny the validity of the sale under the overdue tax law; deny the jurisdiction of the

chancery court to decree the sale; allege that complaint in the said overdue tax proceeding does not allege and set out the year or years for which tax was due, and that there was no warning order giving amount of taxes and the years for which they were due; that there was no affidavit showing the lawful publication of such warning order; that no decree *pro confesso* was entered upon the record by the clerk in said cause as required by law; that the decree was for a tax for a year not given in the complaint, warning order and publication; that sale under said decree was not reported and confirmed by the court as required by law; and allege that the land was forfeited to the State for taxes before the year 1877, and that on the 15th day of March, 1879, the State of Arkansas, by act of the general assembly, donated the land to the Little Rock, Mississippi River & Texas Railway Company conditionally; that the lands were selected by the railway August 18, 1883, and on the 18th day of December, 1883, the State of Arkansas conveyed the land to the said railway by deed of the Governor; that the railway mortgaged the land, which mortgage was foreclosed in the United States Circuit Court at Little Rock, Ark., and that the land was bought by defendant Gould as trustee, and that the sale thereof was approved, and that the same was a judicial sale. Allege the payment of tax by railway to 1893 and by defendant Gould since 1893, until October 26, 1896, when Gould bargained and sold the land to defendant Beasley on a time contract, and put Beasley into possession thereof; and that since that time Beasley has been seized and possessed of the said land, and every part thereof, in open, notorious and adverse possession, and paid the tax thereon since 1896; that at no time was the plaintiff possessed or seized of the said land or any part thereof; plead statutes of limitation; set up improvements made in good faith by Beasley on the said land under his contract with Gould, in all amounting, with tax, to $342.75."

On the 29th day of November, 1900, the following agreement between parties was filed:

"It is agreed that upon the trial of this cause the same shall be submitted to the court sitting as a jury. And defendants waive all proof of plaintiff's corporate capacity, and admits same. And waive all proof of allegations in complaint as to the conveyance to

Altheimer by Clayton, commissioner, and mortgage by Altheimer to plaintiff, and the foreclosure of such mortgage, and sale and conveyance under decree, and admits that all title ever held by said Altheimer is fully vested in plaintiff. Plaintiff admits that the State's title, whatever it is, by virtue of the donations under act of 1879, conveyed by deed of December 18, 1883, is vested in defendants, and three questions are to be presented to the court:

"(1) All the statutes of limitation; (2) the validity of the proceedings, under the overdue tax law of 1881, of the Jefferson chancery court concerning said land, and if the same shall be held valid so as to pass title to Altheimer under the sale and deed by Clayton, commissioner, to them; then (3) the value of the improvements put upon the land in controversy by defendants, and the amount of taxes paid thereon by defendants and those from whom they acquired title since 1883, less the mesne profits properly to be allowed plaintiff since its acquired title. And judgment shall be entered by the court upon its findings, upon said three questions, but the right to recover for improvements by defendants is not conceded by plaintiff."

After hearing the evidence adduced by all the parties, the circuit court decided the three questions in favor of the plaintiff, and rendered judgment in its favor for the land and $60 for rents thereof, as damages; and the defendants appealed.

The County of Jefferson, in the name of the State of Arkansas, instituted a suit in the circuit court of that county on the equity side thereof against the land in controversy and other lands to have the same condemned and sold for the payment of certain taxes due thereon. This suit was instituted on the 22d day of August, 1881, under an act entitled "An act to enforce the payment of overdue taxes," approved March 12, 1881; and the court, by decree therein, ordered the land sold to pay certain taxes, specified in the decree, due thereon. The validity of this decree is questioned by the appellants. Is it a valid decree?

The evidence shows that a complaint was filed in the suit, and that it has been lost, and for that reason was not produced and read as evidence. On the filing of it the clerk of the court entered on the record a warning order, which was in strict conformity with the statute. In this order it is stated that the plaintiff filed a complaint, and set forth therein that certain taxes

are due on the land in controversy and other lands, thereby implying that the taxes due on the lands were specified. The warning order is as follows: "In Jefferson Circuit Court in Vacation, "August 22, 1881.

"The State of Arkansas on the Relation of Jefferson
    County ........ ....................... ......... Plaintiff.

                v.

"Certain Lands on Which Taxes Are Alleged to be
    Due ............... ..................... Defendant.

"Now on this day comes the plaintiff and files herein in court its complaint in which it sets forth that there are certain taxes due on the following lands, towit: (among others) southeast quarter of northwest quarter, section 31, township 4 south, range 7 west (being nearly hundreds of tracts additional). Now, therefore, all persons having any interest or right in said lands are required to appear in this court in forty days then and there to show cause, if any they can, why a lien shall not be declared on said land for unpaid taxes, and why said lands shall not be sold for the nonpayment thereof.

            (Attest.)            "A. S. MOON, Clerk.
                                 "R. H. STANDFORD, D. C."·

The warning order, in connection with the decree, was sufficient to show that the lands in controversy were described in the complaint, and that the plaintiff therein thereby sought to have the same condemned and sold to pay certain taxes due thereon. They (the warning order and decree) are the proceedings, in part, which the "overdue tax act" provides shall follow the filing of such complaint.

A copy of the warning order with affidavit of publication thereof was also filed, but they were lost, and for that reason were not produced and read as evidence. The court found that the publication was according to law. This as to publication is sufficient to sustain the jurisdiction of the court against collateral attack. *Clay v. Bilby,* 72 Ark. 101; Sand. & H. Dig. § § 4190, 4191.

Jurisdiction was acquired over the land and its owner, in the suit instituted under the "overdue tax act," by the filing of the

complaint, stating that taxes were due thereon, and by publication of the required notice. For mere errors and irregularities the decree in such suits could be attacked only in a direct proceeding. *McCarter* v. *Neill*, 50 Ark. 188; *Clay* v. *Bilby*, 72 Ark. *supra.* The failure of the clerk to enter on record a decree *pro confesso* according to the act, if any, was a mere irregularity, and did not subject the decree to a collateral attack, as appellants contend. It did not deprive the court of the jurisdiction to render the final decree, or work any injury that was not cured by such decree. Acts of 1881, pages 66, 68, secs. 5, 8 and 9.

It is contended that the evidence in this case fails to show that the land in controversy was sold under the decree in the "overdue tax suit." The record does show that the special commissioner appointed to make the sale filed a report of his proceedings under the decree, and it shows the sale of the land in that action. From this we understand that the land involved in that suit and held subject to sale was sold. The record further shows that the report was approved, and that the sale was confirmed.

The appellants virtually admit, in their agreement as to facts filed in the case before us, that the land in controversy was sold under the decree. They say that they waive "all proof of allegations in complaint as to the conveyance to Altheimer by Clayton, commissioner;" and in the statement of the second question to be decided in this case say: "(2) The validity of the proceedings, under the overdue tax law of 1881, of the Jefferson chancery court concerning said land, and if the same shall be held valid so as to pass title to Altheimer the sale and deed by Clayton, commissioner, to them," etc. They concede that there was a "sale and deed by Clayton," meaning by sale a sale of the land in controversy under the decree in the "overdue tax suit."

Was appellee barred from maintaining this action by the statutes of limitation? The appellants claim that the land in controversy was forfeited to the State on account of the nonpayment of the taxes assessed against the same for the years 1874 and 1875, "and remained in the land office of the State of Arkansas as forfeited land until the 15th day of March, 1879, when the State of Arkansas, by an act of the General Assembly, granted said lands, with other forfeited lands, to the Little Rock, Mississippi River & Texas Railway upon certain conditions specified

in the act," and vested the Governor of this State with the
authority to convey the same to the railway company when such
conditions were performed; that on the 18th day of December,
1883, the Governor, finding that the conditions had been per-
formed, conveyed said land by deed to the railway company;
that afterwards the company conveyed the land to Henry Wood,
in trust to secure certain indebtedness; that the mortgage was
foreclosed, and the land was sold and conveyed to George J.
Gould, as trustee;" that afterwards, on the 26th day of October,
1896, the appellant, George Gould, as trustee, entered into a con-
tract with the appellant Charles Beasley, by which he agreed to
sell him the lands in controversy for the sum of $100 to be paid
thereafter, and executed to him a bond conditional to make title
upon payment of the purchase money and the performance of
the other conditions therein recited.   Immediately thereafter
appellant Charles Beasley entered into and took possession of
the land, and has remained in actual possession of the land ever
since, and has cleared and put into cultivation a portion of the
land, towit, about sixteen acres; that the improvements made by
said Beasley on said land are reasonably worth the sum of $320;
that the annual rental value of the said property for the years
1899 and 1900 is $30 per annum."

Appellants contend that the deed executed by the Governor
to the railway company was a donation deed; that they held the
land in controversy under the same; that they have held adversely
for two years before the commencement of this action; and that
appellee is barred from maintaining his action by the statute,
which is as follows:  "No action for the recovery of any lands
or for the possession thereof against any person or persons, their
heirs or assigns, who may hold such lands by virtue of a pur-
chase thereof at a sale by the collector or Commissioner of State
Lands, for the nonpayment of taxes, or who, may have purchased
the same from the State by virtue of an act providing for the
sale of lands forfeited to the State for nonpayment of taxes,
or who may hold such lands under a donation deed from the
State, shall be maintained, unless it appears that the plaintiff, his
ancestor, predecessor, or grantor, was seized or possessed of the
land in question within two years next before the commencement
of such suit or action."   Sand. & H. Dig., § 4819.

Is appellee barred by this statute? In the statutes as passed by the General Assembly the words, "or who may hold such land under an Auditor's deed, commonly known as a donation deed," were used instead of the words, "or who may hold such lands under a donation deed from the State," which now appears in the same as digested. The authority to make such deeds having been taken from the Auditor and vested in the Commissioner of State Lands, the digester of the statutes made the change in the phraseology of the statute to cover the changes in the law as to the authority to execute the deed. The deeds referred to as donation deeds were deeds executed by the Auditor or Commissioner of State Lands whereby lands forfeited to the State on account of the nonpayment of taxes were conveyed to actual settlers who had made improvements and resided thereon to the extent and in the manner prescribed by the statutes, or who had undertaken to do so. Such were the deeds commonly called donation deeds. The statute has no reference to grants by the State and deeds made by the Governor to carry the same into effect.

Appellee is not barred by the two years' statute of limitations.

The appellant, Beasley, having held under a bond for title, which is not color of title, is not entitled, under the statutes of this State, to a judgment for the value of the improvements made by him upon the land. *White* v. *Stokes,* 67 Ark. 184.

Judgment affirmed.

ON REHEARING.

Opinion delivered December 3, 1904.

BATTLE, J. Appellants, in a motion for rehearing, suggest that the court erred in holding that they are not entitled to compensation for improvements made by Beasley, while occupying the lands in controversy, he holding under a bond for title. Is a bond for title color of title within the meaning of the act entitled "An act to be entitled 'An act for the better quieting of titles,'" approved March 8, 1883?

Section one of this is as follows: "Section 1. That if any person believing himself to be the owner, either in law or equity, under color of title, has peaceably improved, or shall peaceably improve, any land which upon judicial investigation

shall be decided to belong to another, the value of the improvements made as aforesaid and the amount of all taxes which may have been paid on said land by such person and those under whom he claims shall be paid by the successful party to such occupant, or the person under whom or from whom he entered and holds, before the court rendering judgment in such proceedings shall cause possession to be delivered to such successful party."

Color of title, as well as good faith, is made necessary to entitle an occupant of lands to compensation for improvements made by him. · One without the other is not sufficient. The words, "color of title," have often received judicial interpretation. They have frequently been defined by the courts "to be that which in appearance is title, but which in reality is no title;" that is, that which in appearance purports to vest title, but in reality is no title. *Wright* v. *Mattison,* 18 How. 56; *Allen* v. *Mansfield,* 108 Mo. 343; *Black* v. *Tennessee Coal, etc., Co.* 93 Ala. 109; 1 Am. & Eng. Enc. Law (2d Ed.), 46, *et seq.,* and cases cited. A bond for title is not in appearance title. It is only an agreement to convey or make title when certain conditions are performed. *Teaver* v. *Akin,* 47 Ark. 528; *White* v. *Stokes,* 67 Ark. 184; *Kilburn* v. *Ritchie,* 2 Cal. 145; *Dunlap* v. *Daugherty,* 20 Ill. 404; *Bride* v. *Watt,* 23 Ill. 507; *Rigor* v. *Frye,* 62 Ill. 507; *Hardin* v. *Crate,* 78 Ill. 533; *Ellege* v. *Cooke,* 5 Lea, 622. It does not appear in this case that the occupant, Beasley, who made the improvements, was or is entitled to a conveyance or title, according to the conditions of his bond. So it is not necessary to say what would have been the effect of his bond if he had complied with its conditions.

The words "color of title" having received a judicial interpretation, they are presumed to be used in that sense in the act of the 8th of March, 1893, there being nothing in the act to indicate a contrary intent. Sutherland on Statutory Construction, § 255, and cases cited; Black on Interpretation of Laws, pp. 130, 131; Endlich on Interpretation of Statutes, § 367.

To make the lands in controversy liable for the value of improvements, the occupant, Beasley, "should have had peaceable possession, at the time the improvements were made, under color of title" in himself, "and should have made them under

the belief that he was the owner of the land." *Beard* v. *Dansby,* 48 Ark. 187; *White* v. *Stokes,* 67 Ark. 184; *Deffeback* v. *Hawke,* 115 U. S. 407. Not having had color of title, he is not entitled to compensation for the improvements made by him.

The motion for rehearing is denied.

RIDDICK, J. (dissenting.) I am not able to concur in the opinion of the court in so far as it holds that a defendant who has in good faith made improvements on land under a bond for title cannot under our statute recover the value of such improvements against one who by virtue of a paramount title recovers the land in an action of ejectment.

The statute under which a recovery is allowed in certain cases for improvements rests upon principles of equity and justice that are exceedingly plain, for it is entirely right and just that when one in good faith, on account of a mistake as to his title to land, has made valuable and permanent improvements thereon, which increase the value thereof, the real owner, when he asks the aid of the law to gain possession of the property, should be required to repay the value of such improvements, to the extent that they have increased the value of the land.

The common law did not permit a recovery for such improvements, and the object of the statute was to remedy this defect of the law, and it, being a remedial statute, should receive a liberal construction, in order to carry into effect the legislative intent.

Now, if A, knowing that B has color of title to land, buys it from him, and takes possession under his purchase, and makes improvements which add to the permanent value of the land, and it turns out that C, and not B, is the owner, the equity of A to receive pay for his improvements is equally strong, whether he received an absolute deed from B, or only a bond for title. His belief in the validity of his own title depends not on whether he has a bond for title or deed from B, but on whether B has an apparently valid title. If B has color of title which is apparently valid, and A, believing him to be the owner, buys the land, and makes the improvements, it seems to me that, within the meaning of this act, he makes them under legal color of title, whether he has a deed or only a bond for title, for he makes them under color of title which B has, and which title B has contracted and

sold to him, giving him all the rights with reference to making improvements that B himself had. To hold differently under a statute that allows a recovery for improvements made in good faith under color of title is to disregard entirely the purpose of the statute, and, by taking what seems to me to be a very narrow and technical view of the law, to draw a distinction where none was ever intended.

But this statute, which is quoted in the opinion, puts the matter beyond question by showing that it is immaterial whether the color of title be legal or equitable. If any person, it says, "believing himself to be the owner, either in law or equity, under color of title has peaceably improved any land," etc., he shall be entitled to be paid the value of his improvements. The words "in law or equity" show beyond question that it is immaterial, so far as the right to recover for the improvements is concerned, whether they were made under an equitable or legal color of title. It was clearly intended to protect the one making expenditures for improvements under the belief that he was the owner of an equitable title, as much so as if he believed he was the owner of the legal title. Now, equity regards that as done which ought to be done. And, after land has been purchased and a valid bond for title executed and delivered by the vendor to the vendee, the vendor is in equity regarded as the owner of the purchase money, and the vendee is looked upon and treated as the owner of the land. "An equitable estate has vested in the vendee commensurate with that provided by the contract." And this is so whether the purchase price has been paid or not, for the lien of the vendor for the purchase price is not inconsistent with the vendee's equitable estate under the contract of purchase. While the legal title remains in the vendor, he holds it in trust for the vendee, and as security for the payment of the purchase price. 1 Pomeroy, Equity Jurisprudence, § 368, and cases cited.

Now, the defendant Beasley in this case purchased the land in controversy from Gould, who had legal color of title by a conveyance from the State, which conveyed him the title to the land. This title was afterwards cut off by an overdue tax sale, though Gould and Beasley were ignorant of this fact. But for this overdue tax sale Gould would have been the owner of the

legal title, and Beasley, by virtue of the bond for title, would have been in equity the owner of the land. In other words, notwithstanding the overdue tax sale, the bond for title from Gould gave Beasley an equitable color of title, and he, being ignorant of the overdue tax sale, was justified in believing that he was in equity the owner of the land. There is nothing in the statute that limits the color of title under which one must hold to claim improvements to a strict legal color of title. On the contrary, as I have before stated, the language of the act protecting one who believes himself the owner, "either in law or equity," shows clearly that color of title in law or equity is sufficient.

The improvements being made by Beasley in good faith under belief that he was in equity the owner of the land, and under an equitable color of title, it seems to me that he comes strictly within the letter as well as the spirit of the statute. For these reasons, I am of the opinion that the decision in *White* v. *Stokes*, 67 Ark. 184, is in conflict with the statute, and should be overruled, and defendant allowed his improvements.

McCULLOCH, J., concurs in the dissenting opinion.