*REYNOLDS v. FEWEL.

No. 1680. Opinion Filed March 19, 1912.

Rehearing Denied June 4, 1912.

(124 Pac. 623.)

1. INDIANS—Death of Enrolled Indian Woman—Rights of Surviving Husband. An enrolled Creek woman died in October, 1899, leaving surviving her husband, a white man not enrolled, and a daughter, and a sister. In 1899, after the mother's death, the daughter died unmarried and without issue. An allotment in the name of the woman's heirs was made in December, 1901. Held:

(1) That the entire estate in the allotment vested in the husband.

(2) That the fact he was of white blood did not prevent him from inheriting, under the Creek law, as heir to his wife and daughter.

2. EJECTMENT — Improvements — Liability of Prevailing Party. Section 2644 of Mansf. Dig. of Ark. (Ind. T. Ann. St. 1899, sec. 1928), which provides that, "if any person believing himself to be the owner either in law or equity, under color of title, has peaceably improved, or shall peaceably improve, any land which, upon judicial investigation, shall be decided to belong to another, the value of the improvements made," is to be paid by the successful party before he can obtain possession, does not entitle a defendant to compensation for improvements made after suit brought against him for the land.

(Syllabus by Rosser, C.)

*Error from District Court, Tulsa County;*
*John H. Pitchford, Judge.*

Action by William M. Fewel against John T. Reynolds. Judgment for plaintiff, and defendant brings error. Affirmed.

*Wm. R. Lawrence,* for plaintiff in error.

*Hainer & Martin,* for defendant in error.

Opinion by ROSSER, C. This was an action by Wm. M. Fewel against John T. Reynolds to recover certain lands in the Creek Nation. The suit was brought in the United States Court for the Western District of the Indian Territory, and after statehood was transferred to the district court of Tulsa county, Okla.,

---

where it was tried and judgment rendered for plaintiff, and defendant has appealed. The lands in controversy were a part of the allotment of Minnie Solander, deceased, who was a member of the Creek Tribe of Indians and of Creek blood. Minnie Solander left surviving her a daughter, Hettie Solander, and her husband, George A. Solander, who was a white man, not enrolled, and a sister, Phoebe A. Trussler. Minnie Solander died in October, 1899, before her allotment had been selected. Her daughter, Hettie Solander, died, unmarried and without issue, in November, 1899, before the allotment of Minnie Solander had been selected. The plaintiff claims the land under a conveyance from George A. Solander; the defendant under a conveyance from Phoebe Trussler.

The questions raised by the defendant may be considered under two heads: First, that the court erred in holding that George A. Solander inherited his wife's allotment; second, that the court erred in holding that the defendant was not entitled to a judgment for the improvements made by him after the suit was brought.

The defendant contends that because George A. Solander was a white man, and not a member of the Creek Tribe, he could not inherit under the Creek law. The parties stipulated that the Creek law of descent and distribution was as follows:

"Sec. 6. Be it further enacted, that if any person die without a will, having property and children, the property shall be equally divided among the children by disinterested persons, and in all cases where there are no children the nearest relation shall inherit the property. Laws of the Muskogee Nation 1890, p. 132."

"Sec. 8. The lawful or acknowledged wife of a deceased husband shall be entitled to one-half of the estate, if there are no other heirs, and an heir's part if there should be other heirs, in all cases where there is no will. The husband surviving shall inherit of a deceased wife in like manner. Laws of Muskogee Nation 1890, p. 60."

And the following was the law as it affected the rights of noncitizens:

"Sec. 1. All noncitizens, not previously adopted, and being married to citizens of this nation, or having children entitled to

citizenship, shall have a right to live in this nation, and enjoy all the privileges enjoyed by citizens, except participation in the lands. Laws of Muskogee Nation 1890, p. 60."

When the agreed statement was offered in evidence, the defendant objected to it, but not upon the ground that it did not contain all the Creek law. The objections made were overruled. The defendant devotes · a considerable portion of his brief to showing that this court should take judicial notice of the Creek law of descent and distribution, and that the Creek law will not permit a white man to inherit the lands of a member of a tribe. There is nó · doubt that the Creek laws of descent and distribution, having been made the rule governing the devolution of a considerable portion of real property of the state, should be judicially noticed. No time need be taken upon that question. But defendant contends that the stipulation did not contain all the Creek law on the subject, and that, considering all the Creek law, the court should hold that a white man cannot inherit. He also contends that parties cannot by stipulation bind the court as to matters of law, or matters of which it should take judicial notice. Without deciding this last question, it is sufficient to say that in the case of *de Graffenried v. Iowa Land & Trust Co.,* 20 Okla. 687, 95 Pac. 624, this court, in an able and exhaustive opinion by Mr. Justice Turner, after considering the Creek statutes and several decisions of the Supreme Court of the Muskogee Nation, including the case of *Fisher v. Muskogee Nation,* in which the rights of John T. Rogers, who was an intermarried white man, were involved, decided that a white husband could inherit from his Creek wife. A brief notice will be given some other decisions by Creek judges, referred to in the brief of defendant (plaintiff in error). The opinion rendered by Ispar-he-chee to L. C. Perryman, October 31, 1893, does not conflict with the decision in the de Graffenried case. The opinion of T. J. Adams, Chief Justice, rendered to the Principal Chief August 5, 1896, holds merely that a noncitizen cannot share in the common property of the tribe. The opinion of Chief Justice John Goat, rendered October 22, 1896, tends to uphold the view that noncitizens could inherit property not tribal in its

character. After the allotment of land was made, it ceased to be tribal property, and it must be taken as settled law of the state that under such circumstances a white person can inherit an allotment in the Creek Nation. *De Graffenried v. Iowa Land & Trust Co.,* 20 Okla. 687, 95 Pac. 624; *Morley v. Fewel,* 32 Okla. 452, 122 Pac. 700; *Shellenbarger v. Fewel, ante,* 124 Pac. 617.

The proof showed that defendant, while in possession of the lands in controversy, under color of title had made improvements of considerable value. A part of the improvements were made before this suit was brought, and the court made that part a charge against the plaintiff. He held that defendant was not entitled to compensation for improvements made after the suit was brought. The defendant assigns this holding as error.

The section of Mansf. Dig. of Ark., which gave to defendants, in possession of land under color of title, the right to a judgment for the improvements, is as follows:

"Sec. 2644. If any person believing himself to be the owner, either in law or equity, under color of title, has peaceably improved or shall peaceably improve any land, which upon judicial investigation shall be decided to belong to another, the value of the improvements made as aforesaid and the amount of all taxes which may have been paid on said land by such person, and those under whom he claims, shall be paid by the successful party to such occupant or the person under whom or from whom he entered and holds, before the court rendering judgment in such proceedings shall cause possession to be delivered to such successful party." (Ind. T. Ann. St. 1899, sec. 1928.)

This section is part of the ejectment statutes of Arkansas, as contained in Mansf. Dig., and was extended over the Indian Territory by act of Congress of March 1, 1889. *Wilson v. Owens,* 1 Ind. T. 163, 38 S. W. 976, affirmed in 86 Fed. 571, 30 C. C. A. 257. See, also, *Hardeman v. Turner,* 3 Ind. T. 338, 58 S. W. 562; *White v. Brown,* 1 Ind. T. 98, 38 S. W. 335.

It was not error to limit the defendant's right of recovery for improvements upon the land to the value of such improvements as were made prior to the bringing of the suit. To entitle a defendant to recover for improvements, made under the Arkansas Statutes, they must have been placed upon the land in good faith, and under an honest belief by the person making

them that he was the owner of the land.  To permit one, against whom suit had been brought to recover lands, to recover for improvements made by him after suit was brought might result in as great, or greater, injustice to the owner of the land than would result to the defendant, should recovery for any improvements be denied him.  Such a holding would put it in the power of the defendant to place enough improvements upon the land, after suit was brought, to prevent the plaintiff from regaining the actual possession for such a length of time as to amount to a denial of justice, and would permit the defendant, in effect, to improve the plaintiff out of his land after he had been sued and thereby given to understand that the plaintiff claimed and intended to assert a title.

· · In *Shaw v. Hill*, 46 Ark. 333, it is said:

"As a general rule, only the *bona fide* occupant is entitled to mitigate an owner's claim for damages and mesne profits, by offsetting the value of his improvements, or to compensation therefor, under the laws of this state.  It would be manifestly inequitable to the owner, and, indeed, highly dangerous policy, to make allowances to one for the expenditures he has made for improvements, in disregard of the owner's rights, with full knowledge of his claim."

In *Fee v. Cowdry*, 45 Ark. 410, 55 Am. Rep. 560, the court said:

"Was Sewell a *bona fide* occupant?  In *Green v. Biddle*, 8 Wheat. 79 [5 L. Ed. 547], Mr. Justice Washington, in delivering the opinion of the court, said: 'He is one who not only *supposes* himself to be the true proprietor of the land, but who is ignorant that his title is contested by some other person, claiming a better right to it.  Most unquestionably this character cannot be maintained, for a moment, after the occupant has notice of an adverse claim, especially if that be followed by a suit to recover the possession.  After this he becomes a *mala fide* possessor, and holds at his peril, and is liable to restore all the mesne profits, together with the land.' "

In *Beard v. Dansby*, 48 Ark. 183, 2 S. W. 701, the court, in construing the statute above quoted, said:

"Good faith, in its moral sense, as contradistinguished from bad faith, and not in the technical sense in which it is applied to conveyances of title, as when we speak of a *bona fide* pur-

chaser, meaning thereby a purchaser without notice, actual or constructive, is implied in the requirement that he must believe himself the true proprietor. It must be an honest belief, and an ignorance that any other person claims a better right to the land. *Fee v. Cowdry,* 45 Ark. 410 [55 Am. Rep. 560] ; *Shaw v. Hill,* 46 Ark. 333."

All these decisions were construing sections 2644 and 2645 of Mansf. Dig. (Ind. T. Ann. St. 1899, secs. 1928, 1929), and were rendered prior to the act of Congress extending those sections over the Indian Territory.

In *Jefferson v. Edrington,* 53 Ark. 545, 14 S. W. 99, 903, rendered after those sections were extended over the Indian Territory, where the question was as to the effect of the same statute, Justice Cockrill said:

"The established rule is that such a claim can be successfully asserted only by one who is a *bona fide* occupant; and, to constitute such occupancy, the statute requires that the possession should be peaceable. Suit for the possession is the highest evidence of hostility to the possessor's right."

See, also, *Beasley v. Equitable Securities Co.,* 72 Ark. 601, 84 S. W. 224.

The judgment should be affirmed.

By the Court: It is so ordered.