## REYNOLDS *v.* FEWELL.

### ERROR  TO  THE  SUPREME  COURT  OF  THE  STATE  OF
### OKLAHOMA.

No. 102.   Argued December 7, 8, 1914.—Decided January 18, 1915.

The courts of Oklahoma have held that under § 7 of the Original Creek
    Agreement of 1901 a non-citizen husband, while by reason of non-
    membership in the tribe was not to be counted in determining the
    distributive shares for the purpose of allotment to, or in the right of,
    enrolled members of the tribe, was entitled under tribal laws to take
    an heir's part of the lands which had been allotted to his deceased
    citizen wife.   *De Graffenreid* v. *Iowa Land & Trust Co.*, 20 Oklahoma,
    687.
The laws of the Creeks were uncertain and ambiguous, and although
    the construction of a tribal law by the Supreme Court of Oklahoma
    is not a construction of a law of the State, and this court has an un-
    doubted right of review, it will not overturn, in a case at most only
    debatable, a rule of construction that for years has governed trans-
    fers of property.
The Supplemental Creek Agreement of 1902, providing that the de-
    scent and distribution of allotments should be in accordance with
    § 49, Mansfield's Digest, Laws of Arkansas, was not an interpreta-

tion of the provisions for descent and distribution in the Original Creek Agreement of 1901, but an express repeal thereof and the establishment of another rule as to the future; but without affecting the meaning of the provision in the Original Agreement as to the cases governed by it.

34 Oklahoma, 112, affirmed.

THE facts, which involve the construction of the Original Creek Agreement and the laws of descent applicable to allotments made thereunder, are stated in the opinion.

*Mr. William R. Lawrence* and *Mr. F. W. Clements* for plaintiff in error.

*Mr. Joseph C. Stone*, with whom *Mr. Henry B. Martin* was on the brief, for defendant in error.

MR. JUSTICE HUGHES delivered the opinion of the court.

The defendant in error brought this action to recover certain lands which had been allotted under the Original Creek Agreement (act of March 1, 1901, c. 676; 31 Stat. 861; 32 Stat. 1971). The allotments described in the complaint had been made on behalf of two deceased Creeks, Minnie Solander and her infant daughter, Hettie L. Solander, that is, the respective allotments ran to the 'heirs' of each. The defendant in error claimed under a lease, executed on September 7, 1905, by George A. Solander, the surviving husband of Minnie Solander and father of the other decedent. At the time of the death of his wife and daughter, as for some years previously, George A. Solander 'resided in the Creek Nation,' but he was not a citizen of that Nation. The plaintiff in error claimed under a conveyance from Phoebe B. Trusler, an enrolled Creek, who as the sister of Minnie Solander was the nearest relative of Indian blood. The question was whether George A. Solander was entitled to take as 'heir,' despite

the fact that he was not a Creek citizen. It was answered
by the state court in the affirmative. 34 Oklahoma, 112;
124 Pac. Rep. 623.

While the complaint embraced a portion of the lands
allotted on behalf of Minnie Solander, as well as lands
allotted on behalf of Hettie L. Solander, it appears from
the record that the judgment related exclusively to the
latter. According to the agreed statement of facts, Hettie
L. Solander was born on February 22, 1899, and died on
November 17, 1899, before receiving her allotment and
leaving her father and aunt surviving. She was entitled
to be enrolled, and was enrolled, as a member of the tribe,
and the allotment on her behalf was made to her 'heirs,'
without further description, on December 4, 1901, under
the second paragraph of § 28 of the act of 1901, *supra*, and
the tribal deed was thereafter executed accordingly. Sec-
tion 28 is as follows:

"No person, except as herein provided, shall be added
to the rolls of citizenship of said tribe after the date of this
agreement, and no person whomsoever shall be added to
said rolls after the ratification of this agreement.

"All citizens who were living on the first day of April,
eighteen hundred and ninety-nine, entitled to be enrolled
under section twenty-one of the Act of Congress approved
June twenty-eighth, eighteen hundred and ninety-eight,
entitled 'An Act for the protection of the people of the
Indian Territory, and for other purposes,' shall be placed
upon the rolls to be made by said commission under said
Act of Congress, and if any such citizen has died since
that time, or may hereafter die, before receiving his allot-
ment of lands and distributive share of all the funds of the
tribe, the lands and money to which he would be entitled,
if living, shall descend to his heirs according to the laws
of descent and distribution of the Creek Nation, and be
allotted and distributed to them accordingly.

"All children born to citizens so entitled to enrollment,

up to and including the first day of July, nineteen hundred, and then living, shall be placed on the rolls made by said commission; and if any such child die after said date, the lands and moneys to which it would be entitled, if living, shall descend to its heirs according to the laws of descent and distribution of the Creek Nation, and be allotted and distributed to them accordingly.

"The rolls so made by said commission, when approved by the Secretary of the Interior, shall be the final rolls of citizenship of said tribe, upon which the allotment of all lands and the distribution of all moneys and other property of the tribe shall be made, and to no other persons."

We are thus referred to the 'laws of descent and distribution of the Creek nation' to ascertain the persons entitled to the property. This explicit and determinative reference disposes of the contention that George A. Solander, although he might be an 'heir' under the Creek laws, nevertheless could not take the lands in controversy because being a non-citizen he was not entitled to the allotment of a distributive share of the tribal lands in his own right. It is sought to find support for this contention in the concluding paragraph of § 28, above quoted, which provides that the approved rolls shall be the final rolls of citizenship, upon which 'allotment of all lands . . . shall be made, and to no other persons.' But this paragraph should be read in the light of § 3 of the act of 1901, *supra*, under which all lands were to be allotted 'among the citizens of the tribe' so as 'to give each an equal share of the whole in value, as nearly as may be.' The persons who were to receive these equal portions were those duly ascertained and enrolled, and the rolls approved by the Secretary of the Interior were to be final with respect to membership in the tribe and the corresponding determination of the distributive shares of the tribal lands. Thus, the provision of the last paragraph of § 28 had manifest regard to those who were to receive allotments if living,

and to those on whose behalf allotments were to be made if they had died. In the latter case, the allotment of the distributive share which would have gone to the enrolled citizen, if living, was to go to his 'heirs.' One who took as such 'heir' would be none the less entitled because he might have in addition an allotment in his own right as a member of the tribe; that would not be a disturbance of the principle of equality in distribution which was so emphatically laid down. Nor, on the other hand, would one be excluded from taking, if he were a described 'heir,' by reason of the fact that he could not himself have received a distributive share as an enrolled citizen. The right of such 'heir' to take would not be determined by reference to his status as a citizen or non-citizen, or by his right to a distributive share of the tribal lands as one enrolled, but by the status of the decedent and the fact that he was an 'heir' of the decedent within the statutory definition.

We have recently had occasion to review the course of legislation with respect to the distribution of the property of Creek intestates. *Washington* v. *Miller*, 235 U. S. 422; *Sizemore* v. *Brady*, 235 U. S. 441. The Creek nation, as a 'distinct political society' (*Cherokee Nation* v. *Georgia*, 5 Pet. 1, 16) had its own laws governing the devolution of the property of its citizens. When Congress put in force in the Indian Territory certain general laws of Arkansas, including Chapter 49 of Mansfield's Digest relating to descents and distributions, it provided that 'the judicial tribunals of the Indian nations' should retain exclusive jurisdiction in all cases in which members of the nation should be the only parties and that to such cases the laws of Arkansas should not apply. Act of May 2, 1890, c. 182, §§ 30, 31; 26 Stat. 81, 94, 95. In 1897, however, it was provided that the laws of the United States and of the State of Arkansas in force in the Indian Territory should 'apply to all persons therein, irrespective of race' (Act of June 7, 1897, c. 3; 30 Stat. 62, 83); and, in 1898, Congress

abolished the tribal courts and prohibited the enforcement of the tribal laws. Act of June 28, 1898, c. 517, §§ 26, 28; 30 Stat. 495, 504. The Original Creek Agreement of 1901, *supra,* operated again to make effective, for the purposes stated, the Creek tribal laws with respect to 'descent and distribution' of the property of Creek intestates (see §§ 7 and 28), and the provisions having this import remained in force until their repeal in the following year. Act of May 27, 1902, c. 888; 32 Stat. 245, 258, 742; Supplemental Agreement, Act of June 30, 1902, c. 1323, § 6; 32 Stat. 500, 501.

The Creek laws thus made controlling are set forth in the agreed statement as follows:

"Sec. 6. Be it further enacted, that if any person die without a will, having property and children, the property shall be equally divided among the children by disinterested persons; and in all cases where there are no children, the nearest relation shall inherit the property. Laws of Muscogee Nation, 1880, p. 132.

"Sec. 8. The lawful or acknowledged wife of a deceased husband shall be entitled to one half of the estate, if there are no other heirs and an heir's part, if there should be other heirs, in all cases where there is no will. The husband surviving shall inherit of a deceased wife in like manner. Laws of Muscogee Nation, 1880, p. 60.

"Sec. 1. All non-citizens, not previously adopted, and being married to citizens of this nation, or having children entitled to citizenship, shall have a right to live in this nation and enjoy all the privileges enjoyed by other citizens, except participation in the annuities and final participation in the lands. Laws of th ɔ Muscogee Nation, 1890, p. 60."

See Perryman's Compiled Creek Laws of 1890; § 6 p. 32; § 8, p. 76; § 1, p. 66; Bledsoe's Indian Land Laws, 2d ed., §§ 829–831.

It will be observed that §§ 6 and 8 make no distinction between citizens and non-citizens. Under § 8, it is 'the

lawful or acknowledged wife,' or 'husband,' that is entitled to take. If a non-citizen within this description was to have 'an heir's part,' there would seem to be no reason for construing § 6 so as to exclude a non-citizen father of a deceased citizen, when the father is the 'nearest relation.' And it is contended by the defendant in error that the provision of § 1, above quoted, only debarred the non-citizen husband, or non-citizen father, from taking a membership interest in the tribal property, that is, from being counted as one of the *units* in the final distribution of the tribal lands, and did not deprive him of the right to take the part of an heir or next of kin in whatever property had come to be owned individually by the deceased wife or child.

While the agreed statement asserts that the laws above quoted are the 'only' Creek statutes 'in relation to descent and distribution' at the time in question, the plaintiff in error insists that we should take judicial notice of numerous other provisions of the Creek laws which it is urged must control. Thus we are referred—taking those statutes which are most nearly in point—to §§ 299 and 300 of McKellop's Compilation (1893) of Creek Laws to the effect that 'no non-citizens shall, on account of marriage with a citizen of this Nation, acquire any right pertaining or belonging to a citizen of this Nation' and that 'no non-citizen shall have the right to reside in or to own any improvement in this Nation, except as provided for in the treaties between this Nation and the United States'; and also to § 108 (McKellop's Comp.; 1900), apparently approved October 30, 1894, that 'no non-citizen shall be permitted to own houses or fences of any kind within the Nation, or any interest therein' and that 'any purchase, grant, lease or other conveyance of lands of the Muskogee Nation, or title or claim thereto given by any citizen or person claiming to be a citizen, contrary to § 2116 of the United States Intercourse Laws' shall be void.

It is not certain that any of these last-mentioned provisions was intended to apply to the succession of a husband or father in case of intestacy. On the other hand, the acquisition of property rights within the Nation by an intermarried person, although a non-citizen, was distinctly recognized by the Creek Act of April 6, 1894 (McKellop's Comp., 1900, §§ 76, 77), relating to the jurisdiction of the tribal courts. This act provided:

"SEC. 76. The courts of this Nation shall have and exercise jurisdiction over all controversies arising out of or pertaining to property rights acquired in this Nation, and situated in the same, by non-citizens who have intermarried with citizens of this Nation and by reason of such marriage secured rights and privileges in this Nation under which such property was acquired and accumulated by them. The jurisdiction of our courts shall extend to controversies over property and property rights acquired by intermarried non-citizens of our Nation who, by virtue of this intermarriage with citizens, acquired such property rights and privileges, and that irrespective of whether such controversies are between non-citizens and citizens of the Muskogee Nation or between any persons whomsoever, who claim in this Nation property rights under and through such intermarried non-citizens which are by them acquired in the manner aforesaid; and all persons hereafter intermarrying with citizens of this Nation shall thereby be deemed to consent that the courts of this Nation exercise jurisdiction over all property rights and privileges that they acquire in this Nation by virtue of their said marriage.

"SEC. 77. All property brought into this Nation by non-citizens in consequence of intermarriage of such non-citizens with citizens of this Nation shall likewise be under the jurisdiction of the courts of this Nation."

That the intermarried non-citizen could inherit under the tribal laws appears to have been the conclusion reached

in an unreported case (*Porter* v. *Brook*) in the United States court for the Western District of the Indian Territory, and this ruling was followed by the Supreme Court of the State of Oklahoma in the case of *De Graffenreid* v. *Iowa Land & Trust Co.*, 20 Oklahoma, 687. It was held that a non-citizen husband, while, by reason of the fact of his non-membership, he was not to be counted in determining the distributive shares for the purpose of allotment to, or in the right of, enrolled members of the tribe, was entitled under the tribal laws to take an heir's part of the lands which had been allotted to his deceased citizen wife. In that case the descent was controlled by the provision of § 7 of the Original Creek Agreement that the land allotted should descend to the heirs of the allottee 'according to the laws of descent and distribution of the Creek Nation,'—the same expression that is used in § 28.

This decision as to the right of intermarried non-citizens to inherit has been repeatedly followed and has become a rule of property which, recognizing the importance of the security of titles, we should not disturb unless it is clearly wrong. But so far from the case being one of manifest error, it is apparent from the review of their provisions that the most that can be said is that the Creek laws were uncertain and ambiguous and that their proper construction as an original question might be regarded as doubtful. It is true, of course, as urged by the plaintiff in error, that we are not dealing with a statute of a State the meaning of which is necessarily settled by the state court, but even where we have undoubted right of review we ought not to overturn, in a case at most debatable, a local rule of construction which for years has governed transfers of property. See *Nadal* v. *May*, 233 U. S. 447, 454.

It is insisted that the Supplemental Creek Agreement of 1902 (*supra*), in § 6, contains an interpretation by Congress of the words used in §§ 7 and 28 of the act of 1901. But we do not so read the later statute. Its evident

purpose was not to interpret the reference in the act of 1901 to the Creek laws of 'descent and distribution,' or to define the content and significance of such laws, but to supersede the former provision and to establish another rule. The previous provision with respect to descent and distribution according to the Creek laws was expressly repealed, and it was provided that 'the descent and distribution' should be in accordance with Chapter 49 of Mansfield's Digest of the statutes of Arkansas with the proviso that Creek heirs, if there were such, should take to the exclusion of others. This was a recognition of dissatisfaction with the provision of the Original Agreement which made the Creek laws controlling, but the meaning and application of that provision in the cases governed by it was in no way affected. .

We are therefore of the opinion that George A. Solander was entitled to the land which was allotted on behalf of his infant daughter and, as in the case of an allotment of this sort the restriction upon alienation was not applicable, he had the right to make the conveyance under which the defendant in error claims. *Skelton* v. *Dill*, 235 U. S. 206.

The judgment of the state court is affirmed.

*Judgment affirmed.*