### RENFRO v. OLENTINE et al.

No. 8867—Opinion Filed Dec. 17, 1918.

Rehearing Denied Feb. 4, 1919.

(178 Pac. 119.)

(Syllabus.)

Indians — Allotments — Inheritance—"Nearest Relation."

Lands allotted, under the provisions of section 28 of an Act of Congress of March 1, 1901 (31 Stat. at L. 870, c. 676), in the name of a Creek citizen who died intestate and without issue before receiving his allotment, descend to his heirs according to the law of descent and distribution of the Creek Nation: and, where both parents are alive at the time of descent cast, are inherited by the mother as the "nearest relation," to the exclusion of the father.

Sharp, C. J., dissenting.

Error from District Court, Creek County; Ernest B. Hughes, Judge.

Suit by W. D. Renfro against Charles Olentine and others. Demurrer to petition sustained, and plaintiff brings error. Affirmed.

N. B. Maxey and Kelly Brown, for plaintiff in error.

Geo. S. Ramsey, E. R. Perry, J. W. Woodford, Malcolm E. Rosser, Edgar A. De Meules, and Villard Martin, for defendants in error Hill Oil & Gas Co. and Cosden Oil & Gas Co.

Noffsinger & Broome, for defendants in error Olentine, Anthis Childers, and the American Nat. Bank of Sapulpa.

R. C. Allen, amicus curiae.

RAINEY, J. This appeal is prosecuted to reverse a judgment of the district court of Creek county in sustaining a demurrer to the petition filed in said court by plaintiff in error. The action was to recover an undivided one-half interest in the allotment of Roy Tillman Renfro, the deceased minor child of W. D. and Betty Renfro. The petition alleges that the allottee died in September, 1899, intestate and without issue, leaving his father and mother as sole heirs. It is agreed the descent was cast according to the

law of descent and distribution of the Creek Nation, as put in force by act of Congress of March 1, 1901 (31 Stat. at L. 870, c. 676), and the question to be determined is whether the father was a joint heir with the mother, or the mother the sole heir to the exclusion of the father.

The judgment of the lower court must be affirmed if we adhere to the rule announced, on this question, in De Graffenreid v. Iowa Land & Trust Co., 20 Okla. 687, 95 Pac. 624, where, as between the mother and father, the mother was held to be the "nearest relation," as the term is used in the Creek law of descent and distribution, and inherited from the deceased allottee to the exclusion of the father. The rule thus announced has been followed by this court in the cases of Irving v. Diamond, 23 Okla. 325, 100 Pac. 557; Wesley v. Diamond, 26 Okla. 170, 109 Pac. 524; Barnett v. Way, 29 Okla. 780, 119 Pac. 418; Big Pond v. People's Banking Trust Co., 52 Okla. 504, 151 Pac. 849.

It is urged that the rule of stare decisis does not apply until the court of last resort having jurisdiction of the subject-matter has passed on the question, and that, since the question presented here arises on the construction of a federal statute, and has not been decided by the Supreme Court of the United States, the cases cited, not having been appealed to and decided by the court of last resort, should not be considered a rule of property.

It is also urged inasmuch as the father was not a party in the De Graffenreid v. Iowa Land & Trust Company Case, and no party claimed through him, the determination that the mother was the nearest relative within the meaning of the Creek law was dictum, and is not binding on this court in the instant case. In the subsequent cases referred to this question was presented and necessary for determination. While these cases follow the De Graffenreid Case without citing additional authorities recognizing the importance of the security of titles, we are constrained to the view that we should not, at this time, overturn them.

We are not unmindful of the rule that the holding must be by the court of last resort having jurisdiction of the subject-matter before it can be said to be a fixed rule of property. But this is a general rule applicable to statutes and questions of general application. In the case of Calhoun Gold Min. Co. v. Ajax Gold Min. Co., 182 U. S. 499, 21 Sup. Ct. 885, 45 L. Ed. 1200, the Supreme Court of the United States held that federal statutes must be interpreted by the federal court independently of local consideration, and cannot be said to have an established meaning, whatever the decisions of the state courts may have been, until they are construed by the Supreme Court of the United States. The question before the court in that case was whether a decision of the Supreme Court of Colorado construing a federal statute had become a rule of property when the same question was presented to the Supreme Court of that state several years later. The decision arose under a mining act of Congress applicable to all the states. In disposing of the contention it was said:

"There are serious objections to accepting that consequence as determinative of our judgment. We might by doing so confirm titles in Colorado, but we might disturb them elsewhere. The statute construed is a federal one, being a law not only for Colorado but for all mining states, and therefore a rule for all, not a rule for one, must be declared. Besides, what consideration should have been given to prior cases, the Supreme Court of the state was better able to judge than we are. It may be that the repose of titles in the state was best fixed by the reversal of prior cases. At any rate, a federal statute has more than a local application, and, until construed by this court, cannot be said to have an established meaning."

While it is true the act of Congress providing for descent and distribution in the Creek Nation is a federal statute, yet it is also true that it has only a local application, and we are not without authority in holding that decisions of this court on such questions of local application become a rule of property. Another question presented in the De Graffenreid Case was whether the noncitizen husband inherited from the intestate citizen wife, and this question was again presented to this court in the case of Reynolds v. Fewel, 34 Okla. 112, 124 Pac. 623. The holding in the De Graffenreid Case, and the subsequent cases following that case on this proposition was held to be a fixed rule of property. The judgment of this court was affirmed by the United States Supreme Court, 236 U. S. 58, 35 Sup. Ct. 230, 49 L. Ed. 465 where it was said:

"Uncertainty and ambiguity in the Creek tribal laws of descent and distribution will not justify the federal Supreme Court in disturbing a local rule of property established by repeated decisions that an intermarried noncitizen may inherit from his deceased intestate citizen wife or child.

"* * * This decision as to the right of intermarried noncitizens to inherit has been repeatedly followed and has become a rule of

property which, recognizing the importance of the security of titles, we should not disturb unless it is clearly wrong. But, so far from the case being one of manifest error, it is apparent from the review of their provisions that the most that can be said is that the Creek laws were uncertain and ambiguous, and that their proper construction as an original question might be regarded as doubtful. It is true, of course, as urged by the plaintiff in error, that we are not dealing with a statute of a state the meaning of which is necessarily settled by the state court; but, even where we have undoubted rights of review, we ought not to overturn, in a case at most debatable, a local rule of construction which for years has governed transfer of property."

In the case of Nadel v. May, 233 U. S. 447, 34 Sup. Ct. 611, 58 L. Ed. 1040, where the question was whether decisions of the Supreme Court of Porto Rico had become a rule of property, it was said:

"This court assumes that the Civil Code went into effect on July 1st, in Ortega v. Lara, 202 U. S. 339 [26 Sup. Ct. 707, 50 L. Ed. 1055], and the Supreme Court of Porto Rico has decided the same point twice. * * * It is impossible to know how many or how important transactions may have taken place on the faith of the repeated solemn assurances, and apart from the general unwillingness of this court to overrule local tribunals upon matters of purely local concern, * * * it is not too much to say that the decisions have become a rule of property, even if we did not think, as we do, that probably the secretary's certificate expressed the legislative will."

In the case of Jackson v. Chew. 12 Wheat. 153, 6 L. Ed. 583, it was said:

"This court adopts the local law of real property, as ascertained by the decisions of the state courts, whether those decisions are founded on the construction of the statutes of the state, or form a part of the unwritten law of the state."

The act of Congress providing for descent and distribution according to the Creek laws, approved March 1, 1901 (31 Stat. at L. 861), was repealed by the act of June 30, 1902 (32 Stat. at L. 500, c. 1323), which provided for descent and distribution in accordance with chapter 49 of Mansfield's Digest of the Statutes of Arkansas, then in force in the Indian Territory. The act under consideration, having application only to the Creek Nation, was in force but comparatively a short time, and the decisions construing the act affect only a limited number of cases. The interests affected and the results likely to follow do not justify disturbing the rule

of property established by the previous decisions of this court.

The judgment of the lower court is therefore affirmed.

All the Justices concur, except SHARP, C. J., who dissents.