MORLEY *et al.* v. FEWEL.

No. 1683.   Opinion Filed March 19, 1912.

(122 Pac. 700.)

1.   **INDIANS—Lands—Inheritance.** An enrolled Creek woman died October 8, 1899, leaving a husband, a white man, and a legitimate daughter of the white man. The daughter died December 19, 1899, unmarried and without issue. An allotment was made to the heirs of the deceased Creek woman December 3, 1901. **Held:**

That by section 28 of the original Creek treaty (Act March 1, 1901, c. 676, 31 Stat. 869) the land descended as if the deceased had died seised after the original Creek treaty was ratified, leaving the same persons, related to her and to each other in the same way as at the actual time of her death.

2.   **SAME—Allotment.** That the provision of the Creek law, which prevents a noncitizen from finally participating in the allotment of the tribal lands, did not prevent the husband from taking half of the allotment as heir to his wife, and did not prevent him from inheriting the daughter's share upon her death.

3.   **SAME—Inheritance.** That as the husband, father of the daughter, would have inherited half of his wife's allotment upon her death, had she died seised while the original Creek treaty was in force, and upon the subsequent death of the daughter would have inherited her half interest in the land as her nearest relation, therefore, both the wife and daughter having died before the allotment was selected, when it was selected the entire estate vested in the father.

(Syllabus by Rosser, C.)

*Error from District Court, Tulsa County;*
*John H. Pitchford, Judge.*

Suit by Ralsa F. Morley and another against W. M. Fewel. Judgment and decree for defendant, and plaintiffs bring error. Affirmed.

*Biddison & Campbell,* for plaintiffs in error.

*B. T. Hainer* and *H. B. Martin,* for defendant in error.

Opinion by ROSSER, C. This action was brought in the district court of Tulsa county. The defendant recovered a judgment quieting his title to certain land, and plaintiffs have appealed. The case was tried upon an agreed statement of facts. It was agreed that Minnie Solander, the allottee, was a citizen by blood of the Creek tribe of Indians, duly enrolled; that she was living April 1, 1899; that she died intestate on the 8th of October, 1899; that she left surviving her George A. Solander, who was her lawful and acknowledged husband, and a child, Hettie L. Solander, who was the legitimate child of said George A. Solander and Minnie Solander; that George A. Solander was an intermarried white, and not a citizen by blood of the Creek Nation; that Hettie L. Solander was a mixed-blood Creek, and duly enrolled as such; that Hettie L. Solander died intestate, unmarried, and without issue, on the 19th day of December, 1899; that Phoebe Trussler was the only sister of Minnie Solander, and that Minnie Solander had no brothers surviving, nor descendants of any brothers or sisters; that George A. Solander and Phoebe Trussler selected and had the Commission to the Five Civilized Tribes allot to the heirs of Minnie Solander the land in controversy; that the allotment was selected December 3, 1901; and that a patent was issued in the name of the heirs of Minnie Solander. The laws of the Creek Nation, with reference to descent and distribution and intermarried whites, are also set out in the agreed statement of facts. Among the provisions of the Creek law one is as follows:

"All noncitizens not previously adopted, and being married to citizens of this nation, or having children entitled to citizenship shall have the right to live in this nation and enjoy all the

privileges enjoyed by other citizens, except in the participation in the annuities and final participation in the lands."

Defendant claims the land under a conveyance from George A. Solander, and plaintiffs claim under a deed from Phoebe Trussler. The only question involved is, as stated in the briefs of plaintiffs:

"Did George A. Solander, under the facts as stated in the agreed statement of facts, inherit the land allotted to the heirs of his wife, Minnie Solander?"

Plaintiff contends that the heirs of Minnie Solander received her allotment by direct grant from the Creek Nation; that therefore they were the allottees of the land; that noncitizens were not entitled by the Creek law to participate in the final distribution of lands, and therefore George A. Solander, being a white man, could not take the land.

This contention is wrong. The heirs of Minnie Solander were not sharing in the distribution. They were merely receiving her share. While the patent was to her heirs, it was patented to them as her representatives and not in their own right. The second paragraph of section 28 of the original Creek treaty, approved March 1, 1901 (31 St. L. 861), provides that:

"All citizens who were living on the first day of April, eighteen hundred and ninety-nine, entitled to be enrolled under section twenty-one of the act of Congress approved June twenty-eighth, eighteen hundred and ninety eight, entitled 'An act for the protection of people of the Indian Territory, and for other purposes,' shall be placed upon the rolls to be made by said Commission under said act of Congress, and if any such citizen has died since that time, or may hereafter die, before receiving his allotment of lands and distributive share of all the funds of the tribe, the lands and money to which he would be entitled, if living, shall descend to his heirs according to the laws of descent and distribution of the Creek Nation, and be allotted and distributed to them accordingly."

Until this section was enacted there was no statute which, by its terms, permitted an allotment to any other than a living person. This section provided a period at which all living members of the tribe became entitled to an allotment, and to a distributive share of other tribal property. While the title to the

lands did not vest on that date, it was declared by this statute or provision that all members of the tribe living April 1, 1899, had, from that time, a potential right of which they could not be deprived by death. The title might not vest before death, but, if it did not, then the heirs should take it. The heirs succeeded to the rights of the deceased.

To hold that one who receives a patent as heir of another is thereby participating in the final division of the lands would lead to the conclusion that a child could not take the lands of its parents, where the allotment was not selected until after the death of the parent, because section 3 of the same treaty provides that the lands shall be allotted so as to give each citizen, as nearly as may be, a share equal in value. All the legislation on the subject leads to the conclusion that it was the intention of Congress and of the tribe to give each member of the tribe an equal share in the final distribution. If the share an heir receives from a deceased ancestor, who died without selecting an allotment, is to be considered against him, he could not receive his own allotment, and anything from the allotment of a deceased ancestor whose selection was made after the ancestor's death, without violating the provisions of section 3 of the original agreement. The proper construction is that the heirs took the estate in the right of the ancestor, and were not participating in the final distribution of the lands within the meaning of the Creek law.

The right of the heirs of Minnie Solander to select her allotment after her death was created by section 28 of the original Creek agreement. She had no title to the lands at her death, and it only came into existence after the original Creek agreement became the law, and the right in her heirs to have it selected after her death was created by the provisions of section 28 of that agreement. As the right was created by that section, it was competent to provide in the section who were the persons entitled to take under its provisions. By its terms the same persons are entitled to take as heirs of Minnie Solander as would have been entitled, had she selected the allotment in her

lifetime, and lived until after the original Creek treaty took effect, and had then died seised of the land, leaving the same heirs, bearing the same relation to her and to each other at that time as they actually bore at the actual time of her death. If the land had been allotted to her and she had died while the original Creek treaty was in .force, leaving George A. Solander and Hettie L. Solander, husband and daughter, living, her heirs would have been her husband, George A. Solander, and her daughter, Hettie L. Solander. Then if Hettie L. Solander had died afterwards, without husband or issue, while the treaty was in force, her father would have inherited her land. The fact that George A. Solander was a white man would not have prevented him from inheriting as heir to his wife, nor as heir to his daughter. *De Graffenreid v. Iowa Land & Trust Co.*, 20 Okla. 687, 95 Pac. 624.

The facts of this case are, except as to the blood of the father, very similar to the facts in the case of *Barnett v. Way*, 29 Okla. 780, 119 Pac. 418. In that case Cita Barnett, during her lifetime, selected her allotment under the provisions of section 11 of the Curtis bill (Act June 28, 1898, c. 517, 30 Stat. 497), and died before the original Creek agreement took effect. After her death, and after the original treaty was adopted, the allotment selected by her was confirmed to her heirs. Her mother had died prior to her death. Her father survived her, but he died before the original Creek treaty was ratified. It was held that her father was her nearest relation, and would have inherited her lands had she obtained title before her death, and then had died after the original Creek treaty became the law, and that his children, some of whom were her half brothers and sisters, would inherit the lands to the exclusion of other half brothers and sisters, children of her deceased mother. In that case, as well as in this, the title did not pass until after the death of the allottee.

The cases of *Barnett v. Way*, 29 Okla. 780, 119 Pac. 418, and *De Graffenreid v. Iowa Land & Trust Co.*, 20 Okla. 687,

95 Pac. 624, are controlling of the questions in this case, and it should be affirmed.

By the Court: It is so ordered.