## CURRY *et al.* v. McDANIEL *et al.*

No. 1489.   Opinion Filed May 14, 1912.

(124 Pac. 319.)

1.  **EQUITY—Reference—Report—Conclusiveness.**   Under the law in force in the Indian Territory prior to statehood, where a cause was referred to a master over objection for any purpose other than to take testimony and state an account, the report is persuasive only and should not be sustained if against the preponderance of the evidence.

2.  **DOWER—Assignment—Actions—Report of Master.**   Record examined and report of the master **held** to be against the preponderance of the evidence.

(Syllabus by the Court.)

*Error from District Court, Pittsburg County;*
*Preslie B. Cole, Judge.*

Action by Fannie Curry and others against E. E. McDaniel and others . Judgment for defendants, and plaintiffs bring error. Reversed and remanded.

*Wiley H. Jones,* for plaintiffs in error.

*Lester & Hammon,* for defendants in error.

TURNER, C. J.   On October 1, 1907, Fannie Curry, plaintiff in error, the widow of Thomas A. Curry, filed her complaint in equity in the United States Court for the Central District of Indian Territory, sitting at McAlester, against E. E. McDaniel and against Maria Atkins, the mother, and certain other persons, the first cousins, naming them, as the only heirs at law of said Curry, deceased, and also against the unknown heirs of said Curry.   The object of the suit was to have dower set apart to her in certain lands (describing them) of which said Curry died seised and possessed on May 23, 1903, within the jurisdiction of the court.   After the mother had died and thus passed out of the case, Cicero Curry, Allen Curry, George Curry,

Curry et al. v. McDaniel et al.

Maria Harris, and Laura Joshua appeared and by leave of court answered and claimed to be also first cousins of Thomas A. Curry, and as such entitled to share in the estate. E. E. McDaniel filed a cross-bill in which he sought a partition of the property which he held in common with deceased. On the hearing, dower was assigned and the land partitioned in kind as prayed and, over objection of appellants, the widow and known heirs, the cause was thereafter, on motion of defendants, referred by the court to the master to ascertain and report to the court who were the heirs or next of kin to Thomas A. Curry, deceased, which he did, finding said Cicero Curry, Allen Curry, Maria Harris, and Laura Joshua also to be first cousins of the deceased as they alleged. After exception thereto as to this finding filed and overruled and judgment rendered and entered upon the report of the referee, which was approved, plaintiffs in error bring the case here.

They assign that the court erred in finding said parties to be first cousins of the deceased, which finding they say is against the weight of the evidence. This is the sole question involved. This report was merely advisory. Concerning the force to be given a report such as this, in *Scroggy et al. v. Kelley et al.*, 32 Okla. 398, 122 Pac. 694, we said:

"It is urged that it was error to refer the cause to a master over the objection of the defendants. Under the law as it existed in the Indian Territory prior to statehood, the court had the right to refer a cause to the master for the purpose of taking testimony or of stating an account (Mansf. Dig., secs. 5260 and 5263 [Ind. T. Ann. St. 1899, secs. 3465, 3468]) of its own motion and without request by the parties. But, if referred for any other purpose, the reference and report of the master did not relieve the court of the duty of weighing the evidence and passing on the whole case. 'It is not competent for a court of chancery of its own motion, or upon the request of one party, to abdicate its duty to determine by its own judgment the controversy presented and devolve that duty upon any of its officers. Henderson's Chancery Practice, sec. 152.' See, also, *Kimberly v. Arms*, 129 U. S. 512 [9 Sup. Ct. 355, 32 L. Ed. 764]; *Davis v. Schwartz*, 155 U. S. 631 [15 Sup. Ct. 237, 39 L. Ed. 289]; *Claypool v. Johnston*, 91 Ark. 549 [121 S. W. 941]. A

report made by a master, where the whole case was referred over the objections of one of the parties, would not be entitled to. the same presumption of its correctness as if the cause had been referred by consent. Where the master was appointed over the objection of one of the parties no presumption would exist in favor of his report, and it would be the duty of the court to review the evidence and decide the case. *In Claypool v. Johnston,.* 91 Ark. 549 [121 S. W. 941], the court said: 'But where the master·is appointed by the court upon its own motion as is said in the case of *Kimberly v. Arms,* 129 U. S. 512 [9 Sup. Ct. 355, 32 L. Ed. 764] : "The information which he may communicate by his findings in such cases upon the evidence presented to him is merely advisory to the court, which it may accept and act upon or disregard in whole or in part, according to its own judgment as to the weight of the evidence." When the court of its own motion deems it fit or necessary to refer to a master any matter for the purpose of aiding or facilitating the court in the proceedings incidental to the cause, it is the duty of the court to review the findings of such master.' The findings of the master in this case were not binding on the court and did not have the same efficacy or effect as a verdict of a jury."

Being merely advisory, the finding of the referee approved by the chancellor that said defendants in error were born in lawful wedlock and were first cousins of the deceased will be sustained if not against the preponderance of the evidence. *Horn et ux. v. Gibson,* 24 Okla. 481, 103 Pac. 563; *Claypool v. Johnston, supra,* citing *Whitehead v. Henderson,* 67 Ark. 200, 56 S. W. 1065; *Brown v. Wyandotte &· S. E. Ry. Co.,* 68 Ark. 134, 56 S. W. 862; *Greer v. Fontaine,* 71 Ark. 605, 77 S. W. 56; *Sulek v. McWilliams,* 72 Ark. 67, 78 S. W. 769; *Hinkle v. Broadwater,* 73 Ark. 489, 84 S. W. 510; *Norman v. Pugh,* 75. Ark. 52, 86 S. W. 833. Such it clearly was.

. After a careful review of the record on this point, the preponderance of the evidence discloses that prior to the Civil War there lived in Georgia a certain planter named Pleas Curry who· was the owner of two slaves, Dempse and Fannie,. who were married according to the custom of slaves (validated by subsequent legislation) and were the parents of Jabe and Maria, also slaves; that· Jabe married a slave woman named Louisa to whom were:

born in what is conceded to be lawful wedlock (or made such by subsequent legislation) Dora Curry (now Kelly), Charles Curry, Columbus Curry, Fannie Curry (now Rowe), Maria Curry (now Hawkins), Willie Curry, Hilliard Curry (now Hawkins), and Abram Curry, all of whom the master found and all concede to be first cousins of deceased, who was the only son and heir of Jabe's sister Maria who intermarried with a slave named Lee Adkins and died subsequent to the death of her father and mother, Dempse and Fannie; that, while Dempse was thus married and living with Fannie, there was also living on the Pleas Curry place another slave woman named Peggy Curry to whom said Dempse had born out of lawful wedlock Malinda and Racheal Curry, both of whom died subsequently to the death of Dempse and Peggy, the latter without issue, leaving as the sole heirs surviving of the former, her children Allen Curry, Cicero Curry, George Curry, Laura Joshua, and Maria Harris, defendants in error, whom the master also found to be the first cousins and next of kin of said Thomas Curry, as stated, but whom we find, from the great preponderance of the evidence to be not so, but who being born out of wedlock have no inheritable blood of the deceased and are not entitled to share in this estate. 19 Am. & Eng. Ency. Law, 1169; *Hall v. U. S.,* 92 U. S. 27, 23 L. Ed. 597; Rogers on Dom. Rel. 558. This we find, in effect, to be the undisputed testimony of practically all the twenty-six witnesses in the cause, including some of the descendants of Pleas Curry who were contemporaneous with these old slaves and who testified positively as against some three or four parties in interest whose testimony was more or less vague and uncertain, amounting at most to a mere surmise that Dempse was married to Peggy. While we are aware that the presumption is in favor of legitimacy, we think that presumption has been fairly overcome here, and such should have been the holding of the court whose action in adopting and approving the report of the master in his finding to the contrary can only be accounted for upon the assumption that the court gave undue weight to his

report and attributed to it, in effect, the weight of the finding of a jury instead, as he should, of regarding it as merely persuasive.

Reversed and remanded.

All the Justices concur.