### *WOODWARD et al. v. DE GRAFFENRIED.

No. 1814. Opinion Filed September 17, 1912.

(131 Pac. 162.)

1. INDIANS—Descent of Creek Indian Lands—What Law Governs. Where a woman enrolled as a Creek freedman selected an allotment under the provisions of section 11 of the Curtis Bill (Act June 28, 1898, c. 517, 30 St. at L. 497), and died before the adoption of the Original Creek Treaty (Act March 1, 1901, c. 676, 31 St. at L. 861), and the land so selected was allotted to her heirs after her death, the Creek law of descent and distribution governs the descent of the land, and the Arkansas law of descent and distribution does not apply.

2. SAME—Who May Inherit. A husband, not a member of the Creek Nation, may inherit land as heir to his wife under the Creek law of descent and distribution.

3. SAME—Vesting of Title. Where a Creek freedman, selected her allotment in accordance with section 11 of the Curtis Bill (Act June 28, 1898, c. 517, 30 St. at L. 497), and died before the adoption of the Original Creek Treaty, the fee did not vest in her in her lifetime, but was first vested in her heirs by the provisions of sections 6 and 28 of the Original Creek Treaty (Act March 1, 1901, c. 676, 31 St. at L. 863, 869.)

4. SAME—Right of Alienation—Removal of Restrictions. Where a Creek freedman selected an allotment under the provisions of section 11 of the Curtis Bill (Act June 28, 1898, c. 517, 30 St. at L. 497), but died before the adoption of the Original Creek Treaty, and the land was afterward allotted and patented to her heirs, no part of her allotment was impressed with homestead character, and all restrictions upon the alienation of such land, including the portion that would have been homestead had the allotments been made to the allottee in her lifetime, were removed by the Act of Congress approved April 21, 1904 (chapter 1402, 33 St. at L. 204).

5. JUDGMENT—Res Adjudicata—Partition—Ejectment. A petition for partition brought on the equity side of the docket in the United

---

*Appealed to the United States Supreme Court.

Woodward et al. v. de Graffenried.

States court for the Indian Territory prior to statehood showed that the defendants in the partition suit were in possession of the land of which partition was sought, holding it adversely to the plaintiff. The court sustained a demurrer to the petition and dismissed the action. **Held**, that the judgment in said partition suit was not a bar to an action in ejectment by the same plaintiff against the same defendants to establish plaintiff's title to the land.

(Syllabus by Rosser, C.)

*Error from District Court, Muskogee County;*
*John H. King, Judge.*

Action by Robert P. de Graffenried against Peggie Woodward and others. From judgment for plaintiff, defendants bring error. Affirmed.

*William R. Lawrence* and *Gibson & Thurman,* for plaintiffs in error.

*Chas. A. Cook* and *J. C. Stone,* for defendant in error.

Opinion by ROSSER, C. This was an action brought in the district court of Muskogee county March 25, 1908, by R. P. de Graffenried against Louis and Peggie Woodward to recover an undivided half interest in certain lands in that county. The property involved in the litigation is a half interest in the allotment of Agnes Hawes. Agnes Hawes was a full-blood negro woman, enrolled on the rolls of the Creek Tribe as a Creek freedman. Louis Woodward was her father and Peggy Woodward her mother. Her husband, Ratus Hawes, was not enrolled, and was neither citizen nor freedman of the Creek Nation. Agnes Hawes selected her allotment of lands in accordance with section 11 of the Act of Congress of June 28, 1898, commonly called the Curtis Bill. On the 29th of June, 1900, Ratus Hawes shot and killed his wife. He was tried upon a charge of murdering her, convicted of manslaughter, and served a term in the penitentiary for the crime. After the death of Agnes Hawes, and after the ratification of the Treaty of March 1, 1901, between the United States and the Creek Tribe of Indians, sometimes known as the Original Creek Treaty, the Dawes Commission

awarded and allotted the land to her heirs, and a patent was issued in the name of her heirs April 1, 1904. Agnes Hawes left no children or grandchildren surviving her, but left surviving her Louis Woodward, her father, Peggy Woodward, her mother, and Ratus Hawes, her husband. On the 22d day of June, 1904, Ratus Hawes executed to plaintiff a warranty deed to an undivided one-half interest in the allotment. On the 2d day of July, 1904, the plaintiff, de Graffenried, brought an action in equity in the United States Court for the Western District of the Indian Territory, at Muskogee, against Louis and Peggie Woodward to partition the land. A demurrer was sustained to the original complaint in that case. The plaintiff then filed an amended complaint, in which he alleged his ownership of a half interest in the land by virtue of the conveyance from Ratus Hawes; that Louis and Peggie Woodward were in possession, refusing to recognize plaintiff's right to any portion of the land or to the rents and revenue; and that the land was capable of partition. The complaint concluded with a prayer that the land be partitioned. A demurrer was sustained to the amended complaint, and, the plaintiff declining to plead further, the court dismissed the complaint. The defendants pleaded the proceedings and judgment in that suit in bar of the present suit. After the present suit was brought Louis Woodward died, and the suit was revived in the name of his heirs. The parties waived a jury and tried the case to the court. There was a judgment for plaintiff, and defendants appeal.

There are five questions presented by the defendants:

The first is whether or not the Creek law of descent and distribution, or the Arkansas law of descent and distribution, controls the devolution of the estate. The defendants take the position that the law in force June 29, 1900, controls. Their contention is that, when Agnes Hawes selected her allotment under the provisions of the Curtis Bill, her allotment was perfected, and had become vested and absolute in her before her death, at which time the Arkansas law of descent and distribution was in force in the Creek Nation. If the selection of the land by Agnes Hawes in her lifetime, under the provision of

section 11 of the Curtis Bill, had vested title in her, this contention could be sustained, but this court in the case of *Barnett v. Way*, 29 Okla. 780, 119 Pac. 418, held that the selection of the allotment under the provisions of section 11 of the Curtis Bill (Act June 28, 1898, c. 517, 30 St. at L. 497) did not vest the allottee with any title to the fee in the land, and that no way was provided, under the provision of that act, for the allottee to obtain title, and that a mehod by which the allottee could obtain title was first provided by the Original Creek Treaty. Act March 1, 1901, c. 676, 31 St. at L. 861. It was held that an allotment under section 11 of the Curtis Bill only carried the use and possession of the land that was allotted, and that an allotment thereunder did not carry any title or estate in the fee, and that the fee could not, and did not, descend to the heirs from the allottee. It was further held in that case that as by section 6 of the Original Creek Treaty (Act March 1, 1901, c. 676, 31 St. at L. 861) all allotments made to Creek citizens prior to the ratification of that agreement as to which there was no contest, and which did not include public property, were thereby ratified, and that such allotments should in all things be governed by the provisions of that treaty, the allotment did not fail, but was ratified by section 28 of said Original Creek Treaty. It was further held that there was vested in the heirs of such allottee all the right and title the allottee would have received if the allotment had been selected subsequent to the ratification of the treaty. It was also held that by section 28 of the Original Creek Treaty the law of descent and distribution of the Creek Nation governed the descent of the land. and that the heirs were to be those made such by the Creek law, and not by the Arkansas law. This decision was followed in the case of *Morley v. Fewel*, 32 Okla. 452; 122 Pac. 700; *Shellenbarger v. Fewel*, 34 Okla. 79, 124 Pac. 617, and *Reynolds v. Fewel*, 34 Okla. 112, 124 Pac. 623. No arguments are advanced, or authorities cited, which justify a different decision in this matter, even though it were a new question. It cannot be expected that the decisions above stated will be overturned without strong and cogent reasons therefor.

The next question urged is that, even admitting that the Creek law of descent and distribution governs, it should be so interpreted as to exclude persons not members of the Creek Tribe from inheriting. This point, also, has been determined adversely to the contention of the defendants in the case of *de Graffenried v. Iowa Land & Trust Co.,* 20 Okla.. 687, 95 Pac. 624. The decision in that case was followed in *Morley v. Fewel,* 32 Okla. 452, 122 Pac. 700; *Shellenbarger v. Fewel, supra,* and in *Reynolds v. Fewel, supra.* It is ably contended by counsel for defendants that this court at the time *de Graffenreid v. Iowa Land & Trust Co., supra,* was decided, did not have before it all the Creek laws and decisions governing descent and distribution. However, it was the duty of this court to judicially know the Creek law, and the decision in that case has become a rule of property. Not only that, but in the case of *Reynolds v. Fewel,. supra,* the same counsel, who now appear for defendants in this. case, presented the same proposition, and the same statutes of descent and distribution and the same decisions of the Creek courts were before this court as are presented in this case, and it was again held that a person not a member of a tribe could inherit lands after they were allotted. It was held, in effect, that after the property lost its tribal character noncitizens of the Creek Nation could inherit it. These decisions cannot and should not be overruled. Descent of property after it has lost its tribal character should follow the line of natural affection, and there is no reason for presuming that a member of the Creek Tribe has not the same affection for his or her white relatives as for relations of the Indian blood of the same degree of relationship.

It is next contended by the defendants that the Creek law of descent and distribution cannot be applied to the descent of the allotment in suit here, for the reason that the title had become vested by descent cast on the 29th of June, 1900, and that to change its devolution would be in violation of the fifth amendment to the Constitution of the United States, which provides that no person shall be deprived of life, liberty, or property without due process of law. This contention has been answered under the first proposition advanced by the defendants.

Agnes Hawes did not own the fee at the time of her death, and the heirs had no right to the land she had selected. The right of the heirs was created by section 28 of the Original Creek Treaty, and that section also provided by what law the heirship should be determined. The same law that created the right in the heirs, provided that the heirs should be determined according to the Creek law. This did not violate the fifth amendment to the Constitution or any other constitutional provision.

The next contention is that as to the portion of the land constituting the homestead of the deceased, Agnes Hawes, the conveyance was void because the homestead was subject to restrictions at the time of the conveyance. Act Cong. April 21, 1904, c. 1402 (33 St. at L. 204), removed the restrictions from the lands of all allottees not of Indian blood except homesteads. If it should be found that none of the land allotted to her heirs was homestead, it would not be necessary to consider this assignment further.

In the case of *Mullen v. United States,* 224 U. S. 448, 32 Sup. Ct. 494, 56 L. Ed. 834, where the question was as to the alienability of lands allotted in the name of a Choctaw Indian after his death, the court said:

"In the agreement with the Creek Indians (Act March 1, 1901, c. 676, 31 St. at L. 861, 870), it was provided that in the case of the death of a citizen of the tribe after his name had been placed upon the tribal roll made by the commission, and before receiving his allotment, the lands and money to which he would have been entitled, if living, should descend to his heirs, 'and be allotted and distributed to them accordingly.' The question arose whether in such cases there should be a designation of a portion of the allotment as a homestead. In an opinion under date of March 16, 1903, the then Assistant Attorney General for the Interior Department (Mr. Van Devanter) advised the Secretary of the Interior that this was not required by the statutes. He said: 'After a careful consideration of the provisions of law pertinent to the question presented, and of the views of the Commissioner of Indian Affairs and the Commissoin to the Five Civilized Tribes, I agree with the latter that in all cases where allotment is made directly to an enrolled citizen it is necessary that a homestead be selected therefrom and conveyed to him by separate deed, but that, where the allotment is made directly

to the heirs of a deceased citizen, there is no reason or necessity for designating a homestead out of such lands or of giving the heirs a separate deed for any portion of the allotment, and therefore advise the adoption of that rule."

The court, in effect, approved this opinion of the Assistant Attorney General, and held that where a member of the Choctaw or Chickasaw Tribe died before selecting his allotment, and the land was allotted in his name after his death, none of the land was homestead, and that none of the land was subject to restrictions in the hands of the heirs. The opinion of the Assistant Attorney General was upon the exact question here, and is here followed. The land was allotted to the heirs, and not to the member who would have been entitled had she lived, and none of it was homestead. It is immaterial that a portion of it was designated as homestead in the patent. The provision with reference to the homesteads was made for the benefit of the allottee, and was not intended to affect allotments made in the name of the heirs after the death of the allottee. The matter of creating a homestead was governed by law, and the persons executing a patent could not, by designating the patented land as homestead, make it homestead, unless the law gave them authority to so designate it.

The last proposition on which defendants rely is that the judgment in the partition suit is a bar to this action. It is urged that the title to the land was in issue in the partition suit, and that when the court sustained a demurrer to the petition in that suit, and rendered judgment for the defendants, there was such an adjudication of the title as prevents the plaintiff from maintaining this action. It will be observed that the partition suit was brought in equity. In so bringing the action plaintiff followed a practice almost, if not quite, universal. No case has been found where a partition suit was ever brought on the law side of the docket in the state of Arkansas. The practice in the Indian Territory was to bring such suits on the equity side of the docket. In the case of *Byers v. Danley,* 27 Ark. 77, decided in 1871, the Supreme Court of the state of Arkansas decided that equity would not take jurisdiction of a partition suit where

the land was held adversely to the plaintiff in the partition suit. In *London v. Overby,* 40 Ark. 144, decided in 1882, the same rule was laid down. In *Moore v. Gordon,* 44 Ark. 334, the rule is followed. In the opinion in that case the court said:

"The proceeding for partition cannot be made a substitute for ejectment to recover an interest in land held partially by others."

In *Criscoe v. Hambrick,* 47 Ark. 235, 1 S. W. 150, the rule was reiterated that partition could not be maintained against a person in adverse possession. The court said:

"So far as the record discloses, the lands are held adversely to him; he is excluded from any participation in the rents and profits; and his title is in dispute. He must therefore resort to ejectment to establish his title, as an action for partition is maintainable only by a party in possession, or whose title is admitted."

The doctrine of these cases was adhered to in *Head v. Phillips,* 70 Ark. 432, 62 S. W. 878; *Eagle v. Franklin,* 71 Ark. 544, 75 S. W. 1093.

It was the rule in the *nisi prius* courts in the Indian Territory prior to statehood that a suit in equity for partition could not be maintained against persons in adverse possession. The title was not in issue, and could not be in issue in the suit for partition brought by the plaintiff, and the trial court did not err in overruling the plea of *res adjudicata.*

The judgment of the district court of Muskogee county should be affirmed.

By the Court: It is so ordered.