# WARNER *et al.* v. GRAYSON *et al.*

No. 4751.    Opinion Filed May 25, 1915.

(149 Pac. 235.)

**INDIANS—Allotment—Vesting Title—Descent and Distribution.** Where a Creek freedman, duly enrolled as such, selected, filed upon, and was in possession of her allotment, under section 11 of the Curtis Act (Act June 28, 1898, c. 517, 30 Stat. 497,) and died before the adoption of the Original Creek Agreement (Act March 1, 1901, c. 676, 31 Stat. 861), the fee did not vest in her, in her lifetime, but was first vested in her heirs, by the provisions of section 6 and 28 of the Original Creek Agreement (Act March 1, 1901,) and descended to them under the law of descent and distribution of the Creek Nation, under the provisions of section 28 of said act.

(Syllabus by Dudley, C.)

*Error from District Court, Wagoner County;*

*R. C. Allen, Judge.*

Action by E. S. Warner and others against Rose Grayson and others. Judgment for defendant Rose Grayson, and plaintiffs bring error. Affirmed.

*Chas. F. Runyan,* for plaintiffs in error.

*W. T. Hunt, A. C. Hunt,* and *Jos. H. Ford,* for defendants in error.

DUDLEY, C.. This is an action in ejectment, brought by the plaintiffs in error against the defendants in error, in the district court of Wagoner county, in September, 1911, to recover possession of certain real estate located therein, being a portion of the allotment of Dinah Grayson, deceased. The parties occupy

the same position here as they did in the trial court, and we will therefore refer to them accordingly. The issues were joined and the case tried to the court, resuling in a judgment in favor of the defendane Rose Grayson, from which the plaintiffs appeal, making the defendants below defendants in error here.

The deceased allottee was a Creek freedman, born in November, 1898, enrolled December 17, 1898, and died in June, 1899. She left, surviving her, her father, Tom Grayson, her mother, Rose Grayson, one of the defendants in error here and Bill Grayson, her brother. The land in controversy, after being selected, was filed on April 21, 1899, and the patents (homestead and allotment deeds) are dated September 5, 1903. The record does not contain a formal certificate of allotment—in fact, it is silent as to whether or not one was ever issued. The record, however, does show that the land in controversy was selected, and filed on, on April 21, 1899, and that the deceased allottee was in possession thereof at the time of her death.

The plaintiffs claim title to an undivided one-half interest in the land in controversy, through conveyances from Tom Grayson and Bill Grayson, father and brother, respectively, of the deceased allottee. They insist that chapter 49 of Mansfield's Digest of the Laws of Arkansas controls as to the descent and distribution of said lands, and that by reason thereof they are the owners of an undivided one-half interest therein. The defendant Rose Grayson, the mother of the deceased allottee, claims that the law of descent and distribution of the Creek Nation controls, and that therefore she is entitled to the entire allotment.

The sole and only question presented is whether or not the Creek law of descent and distribution, or the Arkansas law of descent and distribution, controls the devolution of the estate. The deceased allottee selected, filed upon, and was in possession of the land in controversy, at the time of her death in June,

1899, under section 11 of the act of Congress approved June 28, 1898 (30 Stat. 495, c. 517), known as the Curtis Act. She died before the adoption of the Original Creek Agreement (Act of Congress approved March 1, 1901, c. 676, 31 Stat. 861). At the time of her death she had no title to this allotment. *Sanders v. Sanders et al.,* 28 Okla. 59, 117 Pac. 338; *Barnett v. Way,* 29 Okla. 780, 119 Pac. 418. She was living on April 1, 1899, and, having selected and filed on the land in controversy prior to her death, and being in possession thereof at the time of her death, the same was allotted to her heirs according to the law of descent and distribution of the Creek Nation, as provided in paragraph 2, section 28, of said act, which is as follows:

"All citizens who were living on the first day of April, eighteen hundred and ninety-nine, entitled to be enrolled under section twenty-one of the act of Congress approved June twenty-eight, eighteen hundred and ninety-eight, entitled 'An act for the protection of the people of the Indian Territory, and for other purposes,' shall be placed upon the rolls to be made by said commission under said act of Congress, and if any such citizen has died since that time, or may hereafter die, before receiving his allotment of lands and distributive share of all the funds of the tribe, the lands and money to which he would be entitled, if living, shall descend to his heirs according to the laws of descent and distribution of the Creek Nation, and be allotted and distributed to them accordingly."

See *Sanders v. Sanders et al., supra; Barnett v. Way, supra; Morley v. Fewell,* 32 Okla. 452, 122 Pac. 700; *Shellenbarger v. Fewell,* 34 Okla. 79, 124 Pac. 617; *Divine v. Harmon et al.,* 30 Okla. 820, 121 Pac. 219; *De Graffenreid et al. v. Iowa Land & Trust Co.,* 20 Okla. 687, 95 Pac. 624; *Bilby v. Brown et al.,* 34 Okla. 738, 126 Pac. 1024; *Hooks v. Kennard,* 28 Okla. 457, 114 Pac. 744; *Woodward et al., v. De Graffenreid,* 36 Okla. 81, 131 Pac. 162.

In the case of *Sanders v. Sanders et al., supra,* this court, speaking through Mr. Justice Turner, announced this rule:

"The allotment of a citizen of the Creek Nation, set apart to her under an act of Congress approved June 28, 1898, who dies in possession thereof prior to an act of Congress approved March 1, 1901, without receiving her certificate of allotment therefor, is distributable to her heirs under patent therefor to them subsequently issued according to the laws of descent and distribution of the Creek Nation as provided in sections 6 and 7 of the act last aforesaid."

Commissioner Rosser, speaking for this court, in the case of *Woodward et al. v. De Graffenreid, supra,* discussing a similar question, said:

"Where a woman enrolled as a Creek freedman selected an allotment under the provisions of section 11 of the Curtis Bill (Act June 28, 1898, c. 517, 30 Stat. 497), and died before the adoption of the Original Creek Treaty (Act March 1, 1901, c. 676, 31 Stat. 861), and the land so selected was allotted to her heirs after her death, the Creek law of descent and distribution governs the descent of the land, and the Arkansas law of descent and distribution does not apply."

The record clearly shows that the land in controversy was selected and filed upon by said deceased allottee during her lifetime, and that she was in possession thereof at the time of her death, under section 11 of the Curtis Act, and that said land was allotted under the act of Congress approved March 1, 1901, ratifying the Original Creek Agreement, and we therefore hold that the law of descent and distribution of the Creek Nation controls.

Counsel for the respective parties having conceded, in their briefs, that the judgment of the trial court should be affirmed, if the Creek law of descent and distribution controls, we therefore recommend that the judgment of the trial court be affirmed.

By the Court: It is so ordered.